FILED
2017 Apr-06  PM 12:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **KRISTEN TRAMMELL,** | ) | |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 2:16-CV-1184-CLS** |
| | ) | |
| **NANCY A. BERRYHILL, Acting Commissioner, Social Security Administration,** | ) ) ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant, Kristen Trammell, commenced this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability and disability insurance benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly considered her subjective testimony, and that he improperly determined her residual functional capacity. Upon review of the record, the court concludes that these contentions are without merit.

A.    **Credibility**

To demonstrate that pain or another subjective symptom renders her disabled, claimant must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" *Edwards v. Sullivan*, 937 F. 2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). If an ALJ discredits a claimant's subjective testimony of pain, "he must articulate explicit and adequate reasons." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)). Furthermore, "[a]fter considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992) (citing *Wilson v. Heckler,*

734 F.2d 513, 517 (11th Cir. 1984)) (alteration supplied).

The ALJ properly applied these legal principles. Claimant testified during the administrative hearing that she could no longer work because of her migraine headaches, rheumatoid arthritis, and anxiety.[1] She stated that she experiences constant stinging, burning, and throbbing pain in her wrists, ankles, neck, and low back.[2] Standing renders the pain "unbearable," but she is comfortable when she lies down with an ice pack, which she does five or six times a day.[3] She experiences migraine headaches with nausea and light sensitivity twice a day for up to four or five hours. She is only able to treat the migraines by taking Tylenol and lying still in the dark.[4] She takes Prozac and Xanax (prescribed by her family physician) for anxiety.[5] She cannot stand or walk for very long, and she can only carry the "bare minimum."[6] She can prepare very simple meals, but she mostly stays in bed all day.[7]

The subjective symptoms and limitations described by claimant, if fully credited, would render her unable to sustain full-time employment. But the ALJ did not fully credit claimant's testimony. Instead, while the ALJ found that claimant's

---

[1] Tr. 40.

[2] Tr. 46.

[3] Tr. 47.

[4] Tr. 48.

[5] Tr. 50.

[6] Tr. 51.

[7] Tr. 53.

medically determinable impairments could reasonably be expected to cause the symptoms claimant alleged, he concluded nonetheless that claimant's statements about the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the residual functional capacity finding.[8]  The ALJ reasoned:

> The claimant has described daily activities that are limited.  Two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled.  First, her allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty.  Even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons.  The record reflects inconsistencies in her reports to her various doctors,. Considering the level of pain alleged by the claimant in her testimony, there is no mention in Dr. Paul's treatment records of her headaches and cervical issues.  Her rheumatoid arthritis is stable. . . .  Similarly, when she was admitted to Shelby Baptist Medical Center for treatment of her abdominal pain, the claimant makes [*sic*] no mention of any headache issues and stated that her Percocet was for treatment of her rheumatoid arthritis.  Overall, the claimant's treatment records are more supportive of the findings of the consultative psychologist and Dr. Jacobs and do not support the degree of limitation alleged by the claimant. . . .[9]

Claimant challenges the ALJ's rejection of her subjective testimony.  First, she asserts that "it is not valid to discredit a claimant's testimony regarding their daily activities because those daily activities cannot be objectively verified."[10]  It would be pointless to allow a claimant to testify about her daily activities if those activities had

---

[8] Tr. 19.

[9] *Id.* (record citations omitted).

[10] Doc. no. 12 (claimant's brief), at 5.

to be independently verified.  Thus, the court agrees with claimant that the ALJ's statement about verifying claimant's activities "simply makes no sense."[11]  The court also agrees that the ALJ's statement about the difficulty in attributing the degree of claimant's limitation to her medical condition, as opposed to other reasons, is unhelpful, speculative, and has nothing to do with any evidence in the record. Finally, as claimant points out, the ALJ incorrectly observed that plaintiff failed to report headaches and cervical pain to Dr. Paul, as Dr. Paul's records consistently mention claimant's complaints of migraine headaches and neck pain.[12]

Therefore, it is true that not all of the ALJ's conclusions are supported by substantial evidence — or even *any* evidence — of record.  Even so, the inability to verify claimant's activity level, the speculative "other reasons" for her limitations, and her alleged failure to mention headaches and cervical pain to Dr. Paul were not the *only* grounds for the ALJ's decision.   The ALJ also relied upon other inconsistencies in the medical record, and upon medical records from Dr. Jacobs and the consultative psychologist that supported a lesser degree of limitation than that which claimant alleged.  Specifically, the ALJ noted that claimant's rheumatoid arthritis had been described as "stable" in Dr. Paul's records.[13]  The ALJ did not, as claimant suggests, construe the word "stable" to mean "without symptoms."  To the

---

[11] *Id.* at 6.

[12] *See* Tr. at 266-80, 426-36, 450-51.

[13] *See* Tr. 19, 44-45, 267, 272, 275.

contrary, the ALJ's residual functional capacity assessment included several limitations that took into account claimant's rheumatoid arthritis.  It was permissible for him to consider the fact that claimant's symptoms had not significantly progressed throughout her course of treatment with Dr. Paul.  The ALJ also permissibly considered that claimant did not complain of headaches when she was admitted to Shelby Baptist Medical Center for treatment of abdominal pain.  Claimant's omission may not have been entitled to *much* weight — after all, she was suffering acute abdominal pain from pancreatitis and did not necessarily have any reason to mention headaches.  Even so, the ALJ did not err in affording *some* consideration to claimant's failure to mention the headaches, and there is no indication that he gave *undue* weight to that factor.

Most importantly, the ALJ's observations about the consistency of claimant's complaints with the reports of Dr. Jacobs and the consultative psychologist *are* supported by the record.  John Neville, Ph.D., the consultative psychologist, examined claimant on March 25, 2014.  Claimant reported suffering from migraine headaches, neck and shoulder pain, and rheumatoid arthritis.  She also reported agoraphobic symptoms, depressed mood, poor energy and appetite, impaired memory and concentration, and increased anger, all of which were not greatly improved by her medications.  Upon examination, claimant demonstrated normal appearance and

speech, neutral mood, good sensory input and cognition, normal thought processes and content, adequate judgment and insight, and borderline to low average intelligence. Dr. Neville's diagnoses were provisional agoraphobia, provisional borderline intellectual functioning, migraine headaches, and rheumatoid arthritis.[14]

He gave the following assessment:

> Psychotherapy and psychiatric treatment are recommended. She appears able to understand and carry out simple instructions. Ms. Trammell would be expected to struggle some with understanding and carrying out complex instructions. Her ability to maintain concentration and sustain an adequate work pace appeared mildly to moderately impaired. It seemed that once she reaches a destination she can function reasonably well there. Ms. Trammell appeared able to respond appropriately to coworkers. She seems willing to accept supervision. Ms. Trammell appears cognitively able to manage financial benefits independently.[15]

The ALJ did not wholly accept Dr. Neville's provisional diagnoses of agoraphobia and borderline intellectual functioning, but he did consider them in making his residual functional capacity finding, and he assigned "great weight" to Dr. Neville's statements about claimant's limitations because they were "supported with explanation."[16] Claimant complains that the ALJ should not have relied upon Dr. Neville's psychological examination to reach a conclusion about the effects of claimant's migraines and rheumatoid arthritis on her ability to work, but there is no indication that the ALJ did reach such a conclusion. Instead, he permissibly relied

---

[14] Tr. 366-69.

[15] Tr. 369.

[16] Tr. 16.

upon Dr. Neville's statement when considering the effects of claimant's *psychological* conditions, and his conclusions were supported by substantial evidence. In any event, claimant has not challenged the ALJ's findings about claimant's psychological limitations on appeal.

Dr. E. Jacob, a neurologist, conducted a workmen's compensation evaluation on January 24, 2011, to determine the lingering effects of a head injury claimant had suffered at work during 2007.[17] Upon examination, claimant was awake, alert and oriented to time and place. She demonstrated no amenia, cyanosis, jaundice, clubbing or generalized lymphadenopathy. She had moderately reduced range of motion in her cervical spine, and normal findings in her thoracic and lumber spine. Her higher intellectual functions, speech, memory, and affect all were normal. The cranial nerve examination was normal. Her muscle tone, power, and coordination were normal in both the upper and lower extremities, and she could toe-walk, heel-walk, and tandem-walk. She could stand on both her right and left legs, and her deep tendon reflexes were equal and normal. Claimant reported reduced cold sensation and vibration on the right side of her face, and reduced pinprick sensation on the left side. Other neurological findings were normal. Dr. Jacob assessed claimant with post-traumatic headache with vascular features, normal neurological examination, and a history of rheumatoid arthritis. He also stated:

---

[17] Tr. 476-80.

I told the patient that I did not have anything new or different to offer. She is taking Cymbalta, Topamax, Lyrica and Zanaflex in spite of that her headache score is 8/10. [*sic*] *The patient is fully functional at present*. She is not in any distress in spite of the headache and under the influence of strong medication including Percocet.

Base[d] on my evaluation today I told the patient she has reached [maximum medical improvement].

After researching Florida impairment rating schedule [*sic*] I find that she has symptoms but no objective signs. Based on that I did not think the patient has any permanent impairment.

I did not see any clinical dysfunction as a result of work related injury. If there is any impairment[,] that may be related to rheumatoid arthritis. I did not see any stigmata or residual as a complication of rheumatoid arthritis. I have given the medication for 2 months and I told her that I will not be seeing her in the future. She can get the medication from her primary care physician who can act for Workmen's Compensation.[18]

The ALJ afforded Dr. Jacob's findings and opinions "great weight" because they were "internally consistent."[19]

Claimant takes issue with the ALJ's acceptance of Dr. Jacob's finding that she "has symptoms but no objective signs." It is true, of course, that objective manifestations of a claimant's symptoms are not required. Instead, a finding of disability can be based upon *either* objective evidence confirming the severity of the symptoms, *or* the existence of a medical condition of sufficient severity that it would be reasonably expected to give rise to the alleged pain. *See Edwards,* 937 F.2d at

---

[18] Tr. 478 (alterations and emphasis supplied).

[19] Tr. 19.

584. But the ALJ did not rely *solely* upon Dr. Jacob's statements about a lack of objective signs; instead, he considered Dr. Jacob's assessment as a whole, and determined that neither it nor the other medical findings in the record supported the level of impairments alleged by claimant.

In summary, even though the ALJ's explanation of his reasons for rejecting claimant's subjective testimony was not perfect, and even though there may have been *some* contrary evidence in the record, the ALJ's findings were nevertheless supported by *substantial evidence*, and that is all that is required to affirm the ALJ's administrative decision.

## B.    Residual Functional Capacity Finding

The ALJ found that claimant retained the

residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can only occasionally use hand controls bilaterally; she can only occasionally reach overhead bilaterally, but otherwise frequently reach in all directions bilaterally; she can handle, finger and feel frequently bilaterally; she can occasionally climb ramps and stairs, but never climb ladders and scaffolds; she can frequently balance and stoop; she can occasionally kneel, crouch and crawl; she should never be exposed to unprotected heights, dangerous tools, dangerous machinery or hazardous process; she should never operate commercial motor vehicles; she can tolerate frequent exposure to humidity, wetness, atmospheric conditions, weather, and extreme heat; she should never be exposed to extreme cold; she can tolerate occasional vibrations and moderate noise levels in the workplace; she should be limited to simple work; she is unable to maintain a production rate pace like that expected of assembly line work, but could perform other goal oriented work; she should be limited to simple work-related decisions;

she can tolerate frequent interaction with supervisors, co-workers, and the general public; she is able to accept constructive, non-confrontational criticism; she is able to work in small group settings; she can accept changes in the workplace if introduced gradually and infrequently; she is able to maintain attention and concentration for two-hour periods with customary rest breaks; a well-spaced work space would be best for maximum concentration; and, in addition to normal breaks, she would be off-task approximately five percent of the regular eight-hour workday (non-consecutive minutes).[20]

Claimant asserts that the ALJ's residual functional capacity finding violated

Social Security Ruling 96-8p, which states, in pertinent part:

The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Symptoms*.  In all cases in which symptoms, such as pain, are alleged, the RFC assessment must:

- Contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate;

- Include a resolution of any inconsistencies in the evidence as a whole; and

---

[20] Tr. 17.

> • Set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work.
>
> The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.  In instances in which the adjudicator has observed the individual, he or she is not free to accept or reject that individual's complaints solely on the basis of such personal observations. . . .

SSR 96-8p (emphasis in original).

> According to claimant, the ALJ impermissibly failed to
>
> even mention pain, or how it might be expected to effect [*sic*] Ms. Trammell's ability to do the nonexertional requirements of work such as concentrating on, and being persistent with job tasks.  Indeed, there was no explanation at all of how Ms. Trammell's pain could affect her ability to work.[21]

Claimant misunderstands the obligations imposed by SSR 96-8p.  It is not necessary for the ALJ to explicitly mention the word "pain" in his summary of the claimant's residual functional capacity. *See Ingram v. Commissioner of Social Security Administration,* 496 F.3d 1253, 1270 (11th Cir. 2007) (holding that the ALJ's hypothetical question to the vocational expert "need only include 'the claimant's impairments,' . . . not each and every symptom of the claimant") (citation omitted). Instead, the ALJ only needs to summarize the claimant's abilities and limitations, which is what the ALJ did here.  Elsewhere in the opinion, the ALJ thoroughly

---

[21] Doc. no. 12 (claimant's brief), at 13.

evaluated claimant's pain and other symptoms in light of all the medical and other evidence, addressed inconsistencies in the evidence, and evaluated the effect of claimant's pain and other conditions on her ability to work.   The ALJ's assessment appears to take into account all of claimant's limitations, and it is supported by substantial evidence.

## C.    Conclusion and Order

Consistent with the foregoing, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED.   Costs are taxed against claimant.   The Clerk is directed to close this file.

DONE this 6th day of April, 2017.

_____
United States District Judge